UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-00048-TBR

UNITED STATES OF AMERICA                                                                                  Plaintiff

v.

DERRICK CARTER                                                                                                     Defendant

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Derrick Carter's motion to suppress evidence. (Docket #36). The United States has responded. (Docket #40). Carter has replied. (Docket #41). For the following reasons, Defendant's motion to suppress is DENIED.

### BACKGROUND

On April 19, 2015, Special Agent Jennifer Traud of the Drug Enforcement Agency ("DEA") applied for and received a search warrant to search for evidence of narcotics activities at Defendant Derrick Carter's residence at 3028 Bank Street, Louisville, Kentucky. Special Agent Traud submitted an affidavit outlining the facts justifying the search. These facts included information from a confidential source, a pole camera installed to observe Carter's residence, three 30-day wiretaps, physical surveillance, and a GPS tracking device placed on the vehicle allegedly delivering narcotics. Specifically, Special Agent Traud's application for search warrant recounted the following facts as the basis for probable cause:

- A Confidential Source ("CS") stated Carter had been dealing in narcotics for approximately six years. Carter received approximately three kilograms of heroin a week from an unknown source out of Gary, Indiana.

- The CS had purchased heroin from Carter on three separate occasions. These purchases were made at 3028 Bank Street.
- The CS previously provided "credible and reliable" information in "multiple ongoing investigations with the FBI, DEA and Louisville Metro Police Department." (Docket #36-1).
- A pole camera was installed at 3028 Bank Street, which was believed to be a "stash" house for heroin. Law enforcement observed people arriving and departing from 3028 Bank Street in a pattern "consistent with narcotics trafficking." (Docket #36-1).
- Three 30-day wiretaps of Carter's cellular phone intercepted calls from late 2013 and early 2014. In April, 2014, Carter placed and received several calls which law enforcement believe were arranging for the delivery and distribution of heroin.
- In August, 2014, the CS provided information that Carter was expecting a shipment of narcotics at 3028 Bank Street. Law enforcement observed a green Chrysler arrive. The driver opened the trunk and leaned into it before entering the residence. Approximately five minutes later, the driver exited 3028 Bank Street and drove away. Law enforcement followed the Chrysler to a Kroger parking lot. The driver exited the Chrysler and approached a white Lincoln that had arrived. The driver exchanged a white bag and for an unknown black item. Law enforcement believed that the driver delivered narcotics to Carter's girlfriend LaDonna Leslie.
- On January 7, 2015, the CS informed law enforcement that Carter would receive a delivery of heroin within the next few days. The CS expected to receive a call from Carter and would perform a controlled purchase. The CS never received a call.
- On January 10, 2015, the pole camera observed the green Chrysler arrive 3028 Bank Street. The driver retrieved an unknown item and entered the residence.
- On January 17, 2015, the pole camera observed the green Chrysler return to 3028 Bank Street. The driver retrieved a white bag from the trunk and entered the residence.

- On January 18, 2015, the CS went to 3028 Bank Street equipped with an electronic monitoring device. The CS reported that the narcotics were gone.
- On January 27, 2015, law enforcement located the green Chrysler in Merrillville, Indiana, which is approximately eight miles south of Gary, Indiana. Law enforcement applied for and received authorization to install a GPS tracking device on the Chrysler. On March 30, 2015, law enforcement applied for and received authorization to continue monitoring the Chrysler.
- The CS informed law enforcement that Carter was expected to receive a supply of heroin on March 7, 2015. At 6:35 pm, on March 7, 2015, the Chrysler arrived at 3028 Bank Street. The same driver as observed on previous occasions exited the vehicle and entered the residence. Five minutes later the driver exited the residence and drove away. GPS showed the Chrysler returned to Merrillville, Indiana at 10:45 p.m.
- The CS informed law enforcement that Carter was expected to receive a shipment of narcotics on April 17, 2015. On April 19, 2015, the GPS tracking device located the green Chrysler traveling south on I-65. At approximately 7:43 p.m., the GPS tracking device showed the Chrysler located at 3028 Bank Street.

Based on the information outlined above, Special Agent Traud obtained a warrant from Jefferson County Circuit Court to search 3028 Bank Street. The warrant was executed on April 19, 2015. Law enforcement recovered approximately one kilogram of heroin inside 3028 Bank Street. Carter moves to suppress this search on the grounds that the affidavit lacked probable cause to secure a search warrant.

## STANDARD

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. To protect that interest, the Fourth Amendment requires that a search warrant issue only upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Probable cause for a search warrant exists where, based on the totality of the circumstances, the affidavit in support of the warrant provides the issuing magistrate a "substantial basis . . . to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. McNally*, 327 F. App'x 554, 556 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000)). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). That is, there must be a "nexus between the place to be searched and the evidence sought." *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Thus, in order for a magistrate to determine probable cause, "the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of warrant." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (citing *Whitely v. Warden*, 401 U.S. 560 (1971)). Those supporting facts need not necessarily be based on the affiant's direct knowledge or observations, but may be based on hearsay information provided by an informant. *Id.* (citing *Jones v. United States*, 362 U.S. 257, 269-70 (1960)).

In its now seminal decision in *Illinois v. Gates*, the Supreme Court set forth the magistrate's responsibility where probable cause is based on an informant's tip:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238. "Veracity" refers to the credibility of the informant, whereas "basis of knowledge" refers to the particular means by which an informant obtained his information. *Smith*, 182 F.3d at 477 (citing *Gates*, 462 U.S. at 228, 230). The Sixth Circuit construes "basis of knowledge" to mean "[t]here must be sufficient information from the underlying circumstances from which an informant could reasonably conclude illegal activity is afoot." *Id.* (citing *Spinelli v. United States*, 393 U.S. 410, 416 (1969)). "In assessing an informant's 'basis of knowledge,' the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements." *Id.* (citing *Spinelli*, 393 U.S. at 416). The Supreme Court made clear in *Gates* that although "veracity" and "basis of knowledge" are highly relevant in assessing an informant's information, courts must look to the totality of the circumstances in determining the effect of an informant's tip on establishing probable cause. *See Gates*, 462 U.S. at 230, 233. This Circuit has further interpreted *Gates*, instructing that a court, in reviewing the sufficiency of the evidence supporting probable cause, is "limited to examining the information contained in the four corners of the affidavit" in light of the totality of the circumstances. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

To deter future violations of the Fourth Amendment, the usual remedy for searches made with a defective warrant is suppression. *E.g.*, *United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007). However, suppression is not always warranted, and evidence may be saved from suppression where an officer acts in objective good faith in executing an otherwise defective warrant. *United States. v. Leon*, 468 U.S. 897, 905, 922 (1984). Thus, in situations where "evidence is obtained in objectively reasonable reliable on a subsequently invalidated search warrant," the "marginal or nonexistent benefits [of

5

suppression] cannot justify the substantial costs of exclusion." *Id.* at 922; *accord United States v. Richards*, 659 F.3d 527, 542 (6th Cir. 2011). Still, there are four exclusions to *Leon*'s good-faith exception: (1) "when the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) "where the issuing magistrate wholly abandoned his [detached and neutral] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the thing to be seized—that the executing officers cannot reasonable presume it to be valid." *Leon*, 468 U.S. at 923.

## DISCUSSION

Carter moves to suppress the search of 3028 Bank Street. Carter argues the search warrant was issued in violation of the Fourth Amendment because the facts contained in the affidavit in support of that warrant were insufficient to establish probable cause. Specifically, Carter argues the affidavit contains an insufficient explanation of the CS's reliability, other facts in the affidavit do not show probable cause, and the information in the affidavit is stale. After reviewing the affidavit, the Court finds there were sufficient facts to support probable cause.[1]

"In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will

---

[1] Carter withdrew his request for an evidentiary hearing during the teleconference held on February 5, 2016.

6

be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "This evidence need not reflect the direct personal observations of a law enforcement official and may be based on a confidential informant's hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *Id*. (*citing United States v. Ventresca*, 380 U.S. 102, 108 (1965)); *see also United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005). In the "absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005).

Carter first argues that the affidavit contained an insufficient explanation of the CS's reliability. The affidavit states the CS "has been proven credible and reliable as information provided by CS to law enforcement has helped in multiple ongoing investigations with FBI, DEA and Louisville Metro Police Department." (Docket #36-1).[2] Carter argues the affidavit is deficient because it does not explain length of the relationship between law enforcement and the CS nor does it confirm that the CS has previously provided information that led to an arrest or seizure. (Docket #36).

The Court agrees that the mere claim that a CS is "credible and reliable," without further elaboration, may be insufficient to show that the CS was reliable. *Compare United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (finding insufficient indicia of

---

[2] Additionally, the CS has one pending felony charge for "possession of a controlled substance" and is cooperating with law enforcement "for consideration on the charges he/she (CS) has been arrested on." (Docket #36-1). A Court may consider this fact in determining the informant's reliability. *See e.g. United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) ("The informant gave his statements after the police discovered a large amount of drugs in his car, giving him an incentive to cooperate with the police to help himself").

7

reliability because there were "no averments about the reliability of the information provided by the anonymous informants in the past" and "no averments about the length of the relationship between Agent Steward and the confidential informants"); *and United States v. Hammond*, 351 F.3d 765, 772 (6th Cir. 2003) ("Detective Engle did not state how long Keeney had known Holt, or if he, himself, knew Holt" and "did not even state that Holt was a 'reliable source' or that he had given the police reliable information in the past") *with United States v. Moore*, 661 F.3d 309, 313 (6th Cir. 2011) (finding informant reliable where "warrant stated that the CI had given information in the past that had led to two drug seizures, and that the CI had personally been at the residence and seen the drugs"); *and United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) ("In this case, Lt. Hiller averred that the confidential informant had assisted federal and state law enforcement officials in the past and this information had resulted in numerous felony arrests"). However, in this case the affidavit does not rely on the mere claim that the CS is reliable, but instead buttresses this statement with both the specific level of detail provided by the CS and independent police corroboration of the CS's information. *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("Corroboration and an explicit and detailed description of wrongdoing are . . . two factors to be considered under the *Gates* "totality of the circumstances" test, which requires "a balanced assessment of the relative weights of all the various indicia of reliability") (citation omitted).

The CS provided specific detail about Carter's activities, including having claimed to have purchased "31 grams [of heroin] on or about May 12, 2013, 57 grams on or about January 6, 2014, and 59 grams on or about March 24, 2014 from CARTER at 3028 Bank Street." (Docket #36-1). The CS also informed law enforcement on several

occasions that Carter had received or would receive a shipment of narcotics. Thereafter, law enforcement either observed heightened traffic at 3028 Bank Street or the appearance of the green Chrysler believed to be delivering narcotics. *United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009) ("Because the informant witnessed the illegal activity on the premises searched and was known to the officer writing the affidavit, there were sufficient indicia of reliability without substantial independent police corroboration").

The Court also finds significant independent corroboration of the facts provided by CS. *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004). A pole camera "verified heavy traffic" in the days after the CS informed law enforcement about the delivery of one-half kilogram of heroin. A wiretap on Carter's cellphone revealed Carter using terminology suggestive of the drug trade. One man also told Carter "I just know certain things we can't talk and say on the phone." (Docket #36-1). Physical surveillance observed the driver of a green Chrysler making several trips to 3028 Bank Street and exchanging a white bag. Law enforcement, believing that the green Chrysler was used in delivering narcotics, obtained a warrant to place a GPS tracking device on the car. The CS informed law enforcement that a delivery of narcotics was expected on April 17, 2015. On April 19, 2015, the GPS tracking device confirmed the green Chrysler traveling from Merrillville, Indiana to 3028 Bank Street. The same day, law enforcement sought a warrant to search 3028 Bank Street for heroin.

Carter criticizes the affidavit for failing to provide more specific facts. For instance, the affidavit does not state whether the CS's purchases of heroin from Carter were controlled buys. The CS went to 3028 Bank Street while wearing an electronic monitoring device but provided no detail surrounding this trip other than that the

narcotics had already been moved. At another unspecified date, the CS reported that Carter had received a shipment of narcotics but most had already been sold. Each of these facts, on their own, would be insufficient to support probable cause. However, as part of the larger narrative provided by the CS, and as corroborated by the police, they assist in showing probable cause that 3028 Bank Street contained evidence of a crime. "Moreover, review of an affidavit and search warrant should rely on a 'totality of the circumstances; determination, rather than a line-by-line scrutiny. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (citation omitted); *see also United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added").

Carter also argues that the information provided by the CS is stale. "A warrant must be supported by 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time.*'" (emphasis in original) *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (*quoting Sgro v. United States*, 287 U.S. 206, 210 (1932)). "The expiration of probable cause is determined by the circumstances of each case and depends on the inherent nature of the crime." (internal citation omitted) *Id*. "The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *Id*. The "sale of drugs out of a residence" is "not inherently ongoing" but rather "exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den." *Id*.

10

In this case, 3028 Bank Street is alleged to have been the host to a long-running drug operation of significant size. The CS stated Carter had been dealing drugs for six years. The CS purchased heroin from Carter on three occasions spanning ten months. Law enforcement used a wiretap to hear Carter ostensibly discussing the drug trade approximately one year prior to the execution of the search warrant. On several occasions law enforcement observed the driver of the green Chrysler deliver a white bag believed to contain narcotics to 3028 Bank Street. These facts describe a "continuing criminal enterprise" which reduces the likelihood that information will have gone stale. *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (finding information in affidavit was not stale because it described "the manufacture and trafficking of crack cocaine over a four-year period of time"). Furthermore, to the extent this information could be considered stale, it was refreshed by the CS's statement that Carter was expecting a narcotics delivery in April, 2015 and the GPS tracking device showing the green Chrysler traveling to 3028 Bank Street on April 19, 2015. *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (*quoting Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir.1987) ("Where recent information corroborates otherwise stale information, probable cause may be found").

For the foregoing reasons, the Court finds that the affidavit contained sufficient facts to support probable cause.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's motion to suppress (Docket #36) is DENIED.

IT IS FURTHER ORDERED that a teleconference is scheduled for Friday, March 18, 2016, beginning at 12:30 p.m. Eastern Time.  The court will place the call to counsel.